PAUL BIRNBAUM and REBECCA BIRNBAUM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Birnbaum v. Commissioner
Docket No. 1713-77.
United States Tax Court
T.C. Memo 1978-429; 1978 Tax Ct. Memo LEXIS 85; 37 T.C.M. (CCH) 1775; T.C.M. (RIA) 78429; October 30, 1978, Filed William G. O'Neill, for the petitioners. Louis Conti, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined a deficiency for the taxable year 1973 in the amount of $ 24,554. The sole issue remaining for decision is whether petitioners realized taxable income on account of a condemnation award of $ 69,000 by the Wilkes-Barre Redevelopment Authority for the condemnation *86 of petitioners' residence which had been damaged by flood. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Paul and Rebecca Birnbaum are husband and wife, who at the time of the filing of the petition herein resided at 200 Joseph Drive, Kingston, Pennsylvania. From 1948 and throughout 1972, the petitioners owned a residence located at 166 Riverside Drive, Wilkes-Barre, Pennsylvania. On June 23, 1972, the flood Agnes occurred in the Wilkes-Barre, Pennsylvania vicinity which caused extensive damage to homes in the area, including the petitioners' house at 166 Riverside Drive. Petitioners filed an amended income tax return for the taxable year 1971 in which there was claimed a casualty loss of $ 130,026 for damage to the petitioners' home and its contents. [1]
As a result of the flood, the petitioners were granted a disaster loan by the Small Business Administration in the amount of $ 40,000. A portion of this loan, $ 5,000, was later forgiven by the Small Business Administration. Petitioners *87 subsequently filed a second amended income tax return for the taxable year 1971 in which they claimed a casualty loss in the amount of $ 61,200 (after $ 5,000 recovery) based on the damage to their residence alone. Finally, on August 12, 1976, petitioners filed a third amended income tax return for the taxable year 1971 in which they claimed a casualty loss in the amount of $ 133,667. The respondent initially determined that petitioners had sustained a casualty loss of $ 119,499 on account of the flood. Of that amount, $ 56,561 represented loss of personal property, none of which is in dispute.The remainder of $ 62,938 represented the loss attributable to the residence. This latter amount was computed as follows: Land
$ 5,000 House
$ 62,938 ($ 61,200 House +
$ 1,738 1968 kitchen
improvements)
$ 67,938 SBA Debt Forgiveness
($ 5,000)
Allowable Loss
$ 62,938 The personal property loss ($ 56,561) and $ 16,097 of the loss on the residence were claimed and allowed as a deduction in 1971. This resulted in part in a reduction in the income taxes otherwise due from petitioners for the taxable year 1971.The balance of the loss was carried back *88 and applied to offset taxable income in 1968. As a result, the petitioners received tax refunds amounting to $ 24,486. On June 27, 1973, the petitioners purchased a new residence on Joseph Drive, Kingston, Pennsylvania, at a cost of $ 73,019. On November 19, 1973, the petitioners' former residence on Riverside Drive was purchased by the Wilkes-Barre Redevelopment Authority, after condemnation proceedings by the Authority. Petitioners received a condemnation award of $ 69,000 (less expenses of sale of $ 1,102) as the fair market value of their house from the Redevelopment Authority. The condemnation award was made pursuant to Pa. Stat.Ann. title 26, sec. 1-602 (1972) as amended September 27, 1973. [2] This statute, as amended, requires the condemning authority (here, the Redevelopment Authority of Wilkes-Barre), in cases where the entire property is taken, to pay as just compensation the fair market value of the property unaffected by the damage resulting from the flood. *89 The petitioners' adjusted basis consisting of the cost and additions at 166 Riverside Drive was $ 115,000 as of the moment immediately preceding the flood. On November 29, 1976, the respondent issued a statutory notice of deficiency to petitioners in which he determined a deficiency in income tax for the taxable year 1973, in the amount of $ 24,554. The respondent's basis for the deficiency was an increase in the petitioners' ordinary income of $ 49,925. It was determined that the net proceeds of the 1973 condemnation award represented the recovery of a previously deducted ordinary loss to the extent of $ 62,938 and was therefore ordinary income in 1973 under sec. 61. [3] exclusive of the amount of $ 13,013 which did not result in a reduction of petitioners' taxes otherwise due. The petitioners, on the other hand, contend that the fair market value of the 166 Riverside Drive residence immediately preceding the flood was not less than $ 115,000. Petitioners sustained a casualty loss of that amount of which $ 69,000 was recovered in the condemnation award. Petitioners would *90 thus concede to the inclusion in income for the taxable year 1973, the sum of $ 2,823 computed as follows: Pre-casualty Value
of Residence
$ 115,000
Less: Tax benefit
$ 49,925
Unrecovered cost
$ 65,075
Less: Net from Rede-
$ 67,898
velopment Authority
Excess recovery to be
taxed $ 2,823
OPINION Petitioners' residence at Wilkes-Barre, Pennsylvania, was destroyed by flood on June 23, 1972. In an amended return for the taxable year 1971, petitioners claimed, as was allowed, a casualty loss of $ 119,499, of which $ 62,938 was attributable to the residence. [4] The parties are in agreement that the petitioners' cost or basis for the house was $ 115,000. However, the actual loss attributable to the flood is limited to the difference between the fair market value of the house immediately preceding the flood and the fair market value of the house subsequent to the flood. The house was deemed a total loss. Western Products Co. v. Commissioner,28 T.C. 1196, 1219 (1957); Buttram v. Jones87 F. Supp. 322, 324 (1943). Subsequently, the Redevelopment *91 Authority condemned the property and the Redevelopment Authority paid petitioners $ 69,000, which they had determined to be the fair market value of the property at the time of the flood, "excluding the flood damage resulting therefrom." Accepting the Authority's valuation, respondent determined that petitioner was reimbursed in full for the allowable loss. United States v. Skelly Oil Co.,394 U.S. 678 (1969); Arrowsmith v. Commissioner,344 U.S. 6 (1952). Since the tax benefit realized by petitioners was limited to the amount of the loss ($ 49,295) which served to reduce petitioners' tax liability, respondent seeks to tax a corresponding amount in the year of condemnation. Montgomery v. Commissioner,65 T.C. 511 (1975); Londagin v. Commissioner,61 T.C. 117 (1973); Chronister v. Commissioner,T.C. Memo. 1973-237; Kroon v. United States, an unreported case, ( D.C. Alaska 1974, 34 AFTR 2d 74-5531, 74-2 USTC par. 9641). Respondent's position is predicated uponRevenue Ruling 74-206, 1974-1 C.B. 198. Petitioners do not challenge that ruling, but instead contend that the *92 fair market value of the house immediately preceding the flood was $ 115,000. Pa. Stat. Ann. title 26, sec. 1-602(c) (1972), as amended September 27, 1973, provides that: (c) In case of the condemnation of property in connection with any program or project which property is damaged by floods, the damage resulting therefrom shall be excluded in determining fair market value of the condemnee's entire property interest therein immediately before the condemnation. The Redevelopment Authority awarded the petitioners $ 69,000 as the value of the property immediately preceding the flood. The reasonableness of the award was corroborated by respondent's expert witnesses. The first witness was P. Forve Leighton, who not only was a realtor in the Wilkes-Barre area, but who was also founder, director and professor in real estate and appraising at Kings College in Wilkes-Barre for 13 years. Mr. Leighton conducted an independent appraisal of the house and determined that the fair market value was $ 69,000. His appraisal was based upon a personal inspection of the house as well as utilization of the "Market Data Approach" which compared similar properties. He *93 examined sales of three comparable residential properties in similar locations, all of which sold for less than the appraised value of petitioners' home. Overall, Mr. Leighton has made approximately 400 appraisals for the Redevelopment Authority in the past, which would seem to establish his expertise in making appraisals of this kind. The respondent's second witness was Charles A. Liscosky, who has been a realtor in the Wilkes-Barre area for 22 years. He, too, personally inspected the house and utilized the "Market Data Approach." Independently of Mr. Leighton, he compared the 166 Riverside residence with three other residential properties to aid in his appraisal valuation. Petitioners' only witness was Ms. Joan Evans, who was also a realtor in the Wilkes-Barre area. She attempted to place a value of at least $ 115,000 on the house by using a "Cost/Replacement Approach." A retrospective appraisal showing replacement value as of a basic date is of little weight. Frost Manufacturing Co. v. Commissioner,13 B.T.A. 802 (1928); American Steel Wool Manufacturing Co. v. Commissioner,14 B.T.A. 762 (1928). Her valuation was based primarily on information *94 from petitioners' accountant and her own familiarity with the area. Her testimony is of little evidentiary value in determining the fair market value for tax purposes. In consideration of the petitioners' failure to show that the fair market value of the residence as of June 22, 1972, exceeded the amount of the condemnation award, the determination of the respondent must be sustained. Decision will be entered for the respondent.
Footnotes
1. Pursuant to sec. 165(h)↩, the 1972 loss could be deducted in 1971.
2. Insofar as relevant, Pa. Stat. Ann. title 26, sec. 1-602(1972) provides as follows: Sec. 1-602 Measure of Damages (a) Just compensation shall consist of the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining immediately after such condemnation and as affected thereby, and such other damages as are provided in this code. (b) In case of the condemnation of property in connection with any urban development or redevelopment project, which property is damaged by subsidence due to failure of surface support resulting from the existence of mine tunnels or passageways under the said property, or by reason of fires occurring in said mine tunnels or passageways or of burning coal refuse banks, the damage resulting from such subsidence or underground fires or burning coal refuse banks shall be excluded in determining the fair market value of the condemnee's entire property interest therein immediately before the condemnation. (c) In case of the condemnation of property in connection with any program or project which property is damaged by floods, the damage resulting therefrom shall be excluded in determining the fair market value of the condemnee's entire property interest therein immediately before the condemnation.↩
3. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩
4. Sec. 165(h) of Internal Revenue Code of 1954↩.